# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**EVAL CESAIRE,**
                    **Plaintiff,**

v.                                        **Case No:  6:15-cv-1886-Orl-28DCI**

**MEDICAL SERVICES, INC.,**
                    **Defendant.**

_____

# ORDER

After Medical Services, Inc. ("MSI") called Eval Cesaire's cellular telephone dozens of times in an effort to discuss his medical debts, Cesaire brought this lawsuit alleging violations of three consumer protection statutes.  Currently before the Court are MSI's Motion for Summary Judgment (Doc. 28) and Cesaire's Motion for Partial Summary Judgment (Doc. 31).  As explained below, Cesaire's motion is denied and MSI's motion is granted in part and denied in part.

## I.    Background

Cesaire obtained medical services at a Florida Hospital laboratory twice in 2014—on either March 29 or May 29 and again on November 17 or 18[1]—after his physician referred him for blood tests.  Florida Hospital referred Cesaire's accounts to MSI, with which it had contracted for "billing assistance."  (Dusty Vigil Decl., Doc. 29, ¶ 3).  Florida Hospital sent the first account—corresponding to the first visit—to MSI on October 24, 2014, and the second account—corresponding to the November 2014 visit—on February 17, 2015.[2]

_____

[1] The record contains references to each of these dates.  For purposes of this Order, the exact dates of the visits are not material.

[2] MSI notes that Florida Hospital also submitted a third Cesaire account to MSI.  That account is not at issue in this case.  (See Doc. 28 at 20 n.8).

(Id. ¶¶ 7 & 9).

From November 12, 2014 through January 8, 2015, and from March 18, 2015, through May 12, 2015,[3] MSI placed fifty-five calls to Cesaire's cellular telephone[4] in an attempt to discuss Cesaire's two unpaid Florida Hospital accounts. (See Call Log, Doc. 31-7). According to a call log maintained by MSI, most of the calls went unanswered. (Id.). MSI left voice mail messages six times, and an MSI representative spoke with Cesaire on four occasions—on November 13, 2014 and on April 21, May 1, and May 12, 2015. (Id.). It is undisputed that during the May 12, 2015 phone call, Cesaire told MSI to stop calling and MSI did not call him again.

Cesaire filed this lawsuit on November 6, 2015. (Compl., Doc. 1). In the Complaint, he asserts two federal claims and one claim under Florida law. In Count I, he alleges that MSI violated the Telephone Consumer Protection Act of 1991[5] ("Telephone Protection Act") by using an automatic telephone dialing system to call his cellular telephone without his consent, and in Counts II and III he alleges that MSI's calls constitute actionable harassment and abuse under the Florida Consumer Collection Practices Act[6] ("Florida Act") and the federal Fair Debt Collection Practices Act[7] ("Federal Collection Act"), respectively.  MSI now moves for summary judgment on all counts, and Cesaire moves for

---

[3] The calls made from November 12, 2014, through January 8, 2015, pertained to the first account.  The calls made from March 18, 2015, through May 12, 2015, pertained to the second account.  (Dusty Vigil Decl., Doc. 29, ¶¶ 8 & 10; Call Log, Doc. 31-7).

[4] In its summary judgment motion, MSI asserted that it made a total of forty-four calls to Cesaire.  (See Doc. 28 at 3).  But in its Response to Cesaire's motion, MSI confirms "that the actual call count is 55 calls, as stated by" Cesaire.  (Doc. 35 at 5 n.1).  MSI's Vice President, Dusty Vigil, acknowledged in her deposition that fifty-five calls were made, (Vigil Dep., Doc. 31-2, at 57), and the call log (Doc. 31-7) relied upon by both parties evidences fifty-five calls.

[5] 47 U.S.C. § 227.

[6] § 559.55-.785, Fla. Stat.

[7] 15 U.S.C. §§ 1692–1692p.

partial summary judgment.[8]

## II.    Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  But when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Anderson, 477 U.S. at 251–52).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"Cross motions for summary judgment do not change the standard."  Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d

---

[8] The relevant filings are:  MSI's motion (Doc. 28), Cesaire's Response in Opposition (Doc. 32), and MSI's Reply (Doc. 37); and Cesaire's motion (Doc. 31), MSI's Response in Opposition (Doc. 35), and Cesaire's Reply (Doc. 38).

32, 38 (1st Cir. 2007).  Such motions "'are to be treated separately; the denial of one does not require the grant of another.'"  Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979)).  "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts."  Id.

## III.   Discussion

### A.   Count I—Telephone Protection Act

In his first claim, Cesaire asserts that MSI violated the Telephone Protection Act, which provides in part that "[i]t shall be unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the **prior express consent** of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ."  47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  The statute provides for a private right of action "to recover for actual monetary loss from . . . a violation, or to receive $500 in damages for each . . . violation, whichever is greater."  Id. § 227(b)(3)(B).  Additionally, if a court finds that a violation was willful or knowing, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount [otherwise] available."  Id. § 227(b)(3).

It is undisputed that MSI used an automatic telephone dialing system to make fifty-five calls to Cesaire's cellular telephone number.  MSI seeks summary judgment on this claim on the basis that it had the "prior express consent" of Cesaire to make the calls and it ceased making calls once Cesaire revoked that consent.  Cesaire, on the other hand, moves for summary judgment in his favor as to liability on this claim, asserting that he did

4

not give "prior express consent" to Florida Hospital or MSI and that even if he gave consent he revoked it six months prior to MSI's cessation of calls.  Cesaire also seeks summary judgment on the question whether most of MSI's alleged violations were willful or knowing.

### 1.    Prior Express Consent

MSI argues that Cesaire gave his prior express consent to call his cellular telephone number by providing that number to Florida Hospital on its medical admissions forms.  But there is a genuine dispute of material fact regarding how Florida Hospital obtained Cesaire's cellular telephone number, and therefore summary judgment cannot be granted for either party on the issue of prior express consent.

"Congress has conferred upon the [Federal Communications Commission ("FCC" or "Commission")] general authority to make rules and regulations necessary to carry out the provisions of the [Telephone Protection Act]." Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1117 (11th Cir. 2014).  In a 2008 ruling that has the force of law,[9] the FCC declared that "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt."  In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559, 564 (Jan. 4, 2008).  Medical creditors are included within that ruling. Mais, 768 F.3d at 1122.

The FCC emphasized in its 2008 ruling "that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor . . . during the transaction that resulted in the debt owed."  Id. at 564–65.  And "[s]hould a question

---

[9] See Mais, 768 F.3d at 1121 (explaining that "[o]rders 'adopted by the Commission in the avowed exercise of its rule-making power' that 'affect or determine rights generally . . . have the force of law'" and stating that the FCC's 2008 ruling "has the force of law" (second alteration in original) (quoting Columbia Broad. Sys. v. United States, 316 U.S. 407, 417 (1942))).

arise as to whether express consent was provided, the burden [is] on the creditor to show it obtained the necessary prior express consent." Id. at 565.  The cell phone number need not be "given *directly* to the creditor." Mais, 768 F.3d at 1123 (emphasis in original).  "[T]he appropriate analysis turns on whether the called party granted permission or authorization, not on whether the creditor received the number directly." Id.  Prior express consent exists "when a cell phone subscriber 'made the number available to the creditor regarding the debt.'" Id. (quoting the 2008 FCC ruling).

It is undisputed that MSI obtained Cesaire's cellular telephone number from Florida Hospital when Florida Hospital electronically transferred a file containing Cesaire's account information to MSI.  (See Doc. 31 at 4).  And Cesaire agrees that if he provided his telephone number to Florida Hospital when he was treated, this would constitute "prior express consent." (See id. at 12); see also Mais, 768 F.3d at 1124 (holding that where the plaintiff gave his phone number to the hospital, by signing forms he allowed the hospital to transmit his number to its collector to bill him for services rendered).  But what has not been established is how Florida Hospital obtained Cesaire's telephone number.

MSI asserts that the declaration of Mariluz Flores, a Florida Hospital employee, "unequivocally states that [Cesaire] provided his cellular telephone number directly to the hospital." (Doc. 37 at 1).  That declaration does not, however, contain such an unequivocal statement.[10]  Nowhere in the paragraph upon which MSI relies or elsewhere in Flores's

---

[10] In the paragraph upon which MSI relies, Ms. Flores states:

     [Cesaire] obtained medical services at Florida Pathology Laboratory at [Florida Hospital] on May 29, 2014 and November 17, 2014. In connection with these medical services, he personally appeared at a Florida Pathology Laboratory at [Florida Hospital] on March 29, 2014 and November 17, 2014, and signed the hospital's standard forms for consent to treatment. It is the policy of Florida Hospital Pathology Laboratory at [Florida Hospital] to

declaration is there an "unequivocal statement" that Cesaire provided his cellular telephone number to Florida Hospital.   Flores speaks to Florida Hospital's policies regarding maintenance of forms and documents in patients' files, but her declaration stops short of stating how the hospital obtained Cesaire's cellular telephone number.

The forms attached to Flores's declaration do not clarify the source of Cesaire's telephone number either.  At his deposition, Cesaire acknowledged that his signature is on several consent forms,[11] but none of those forms contains his telephone number.  And while Cesaire's telephone number appears on several forms in the file that Florida Hospital transferred to MSI, the presence of the number in that file does not establish whether Cesaire provided the number—directly or indirectly—to Florida Hospital.  In his deposition, Cesaire agreed that he provided his cellular telephone number to his referring physician, but he did not recall providing it or his biographical information to Florida Hospital.  (See Cesaire Dep. at 34 & 40).  A Florida Hospital Laboratories form from Cesaire's November 2014 laboratory visit includes—handwritten—Cesaire's name, address, gender, age, date of birth, social security number, and cellular telephone number.  (Ex. 4 to Cesaire Dep., Doc. 41-1 at 8).  At his deposition, Cesaire testified that he could not tell whether that information was in his handwriting or someone else's.[12]  (Cesaire Dep. at 35–36).  Cesaire

---

maintain a copy of signed patient consent forms in the patient file along with various other documents reflecting information given by [Cesaire] at the time of each visit, including his telephone number, and other sources.  A true and correct copy of the consent forms signed by [Cesaire] and other related documents from each visit and maintained in [Cesaire's] file at Florida Pathology Laboratory at Florida Hospital, are attached hereto as Exhibit 1 and Exhibit 2.

(Flores Decl., Doc. 30, ¶ 3).

[11]  (See Cesaire Dep. at 29–30, 32, & 33).

[12]  Cesaire states in his opposition memorandum that this form is "of questionable legibility" and that "[c]uriously, during deposition, [Cesaire] did not recognize the document, or the handwriting."  (Doc. 32 at 8).  This document does not appear to the Court to be "of

did not recall signing forms at Florida Hospital, though he did state that "they give me a paper to bring—I give it to them." (Id. at 42). But, it was not established at Cesaire's deposition what "paper" Cesaire provided to Florida Hospital.

In sum, the question whether Cesaire provided "prior express consent" to Florida Hospital—directly or indirectly—cannot be resolved on the summary judgment record. Both parties' motions are denied to the extent they seek a ruling on the issue of prior express consent.

### 2.    Revocation of Consent

It is undisputed that during a May 12, 2015 phone call from MSI, Cesaire asked MSI to stop calling him and thereby revoked whatever consent he might have earlier provided. MSI did not call Cesaire after that date. But Cesaire asserts that he also revoked any consent six months earlier, during a November 13, 2014 telephone call—the third of the fifty-five calls MSI made to him. Cesaire thus argues that even if he provided consent at the time of treatment, MSI did not have his consent for the fifty-two phone calls made after November 13, 2014. MSI, on the other hand, maintains that Cesaire did not revoke his consent during the November 13 call. MSI has submitted an audio recording of that call, and Cesaire has submitted a transcript of it. The statements made during that call thus are not disputed; the parties disagree only on the meaning and effect of those statements.

In a 2015 ruling, the FCC determined that under the Telephone Protection Act, "the most reasonable interpretation of consent is to allow consumers to revoke consent if they

---

questionable legibility." All of the information—including Cesaire's telephone number—is legible on this form. The Court agrees, however, that it is "curious" that Cesaire could not confirm or deny whether it is his handwriting on the document. While it is not the province of the Court to resolve evidentiary conflicts at the summary judgment stage, it may be difficult to convince a jury that Cesaire did not either provide his number to Florida Hospital or give his physician—to whom he provided his phone number—permission to pass his information on to Florida Hospital.

decide they no longer wish to receive voice calls or texts." <u>In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 30 FCC Rcd. 7961, 7993–94 (July 10, 2015). The FCC further declared in its 2015 ruling that "a called party may revoke consent at any time and through any reasonable means." <u>Id.</u> at 7989–90. Consumers may revoke consent "using any reasonable method including orally and in writing," <u>id.</u> at 7996,[13] and "the [Telephone Protection Act] requires only that the called party clearly express his or her desire not to receive further calls," <u>id.</u> at 7997.

Having reviewed the recording and transcript of the November 13 call, the Court agrees with MSI that Cesaire did not "clearly express his . . . desire not to receive further calls" on that date. The call proceeded as follows:

> MSI representative: Hello. May I speak with Eval?
> Cesaire: Who is this please?
> MSI: This is Sasha with Florida Hospital Orlando.
> Cesaire: Yes, ma'am. How are you doing?
> MSI: I'm fine, and you?
> Cesaire: I'm doing okay.
> MSI: That's good. We were calling to speak with you on an account you have with us. If you don't mind, could you verify your home address for me, please?
> Cesaire: I believe you have it on file, so what the—what account you talking about?
> MSI: We were calling to speak with you about a balance you have. Could you verify your date of birth?
> Cesaire: Which balance you talking about?
> MSI: We can't give you the balance unless you verify your date of birth or your home address.
> Cesaire: Okay. If you don't have—**if you can't give the information, don't call my phone.** Thank you.
> MSI: Well, if we give you the digits, you would be able to give us the–
> [end of call]

(Tr. of May 12, 2015 call, Doc. 31-5) (emphasis added). Cesaire argues that via the bolded

---

[13] <u>See also</u> <u>Osorio v. State Farm Bank, F.S.B.</u>, 746 F.3d 1242, 1256 (11th Cir. 2014) (noting "that the FCC has provided persuasive guidance confirming that called parties may revoke their consent orally"). <u>Osorio</u> predates the 2015 FCC ruling and was approved by the FCC in that ruling. <u>See</u> 30 FCC Rcd. at 7997.

statement—"if you can't give the information, don't call my phone"[14]—he revoked his consent, asserting that in this statement he "clearly and unequivocally told [MSI] to stop calling him," (Doc. 32 at 9), "in no uncertain terms," (id. at 11). But Cesaire did not "clearly and unequivocally" or "in no uncertain terms" ask for the calls to cease in this statement. Instead, Cesaire told MSI not to call his phone **if** MSI "can't give the information" about his account balance. This was a conditional directive rather than a "clear expression" of a desire not to be called again.[15] Although Cesaire maintains that the characterization of his statement as "conditional" is "absurd" Doc. 32 at 10) "stretch[es] all logic to the brink," (id.), "is in dire need of a reality check," (Doc. 38 at 4), and "is quite simply made up of whole cloth," (id.), the Court disagrees. Cesaire's statement was indeed conditional, and MSI was able to satisfy the condition because it possessed information about Cesaire's account

---

[14] In his summary judgment filings, Cesaire repeatedly omits the context of the statement and represents that Cesaire told MSI "in no uncertain terms 'don't call my phone.'" (See, e.g., Doc. 32 at 11; see also id. at 9, 12; Doc. 31 at 13, 14, & 15). These representations are misleading, as were MSI's representations—noted earlier in this Order—that Flores's declaration "unequivocally states" that Cesaire provided his phone number to the hospital. Counsel for both parties should be careful not to overstate their case or misstate the record in their representations to this Court or any other.

[15] Although Cesaire's intent—rather than the clarity of his statement—is not determinative of the issue of whether he revoked consent, MSI's (and the Court's) assessment of Cesaire's November 13 statement as a conditional directive is consistent with Cesaire's behavior on subsequent calls. During the next call during which MSI was able to speak with him, MSI's representative explained that she was calling about an account balance and asked Cesaire to verify his billing address so that they could discuss the account. Cesaire responded, "If you call me, that mean [sic] you have all the information. Tell me what you need." (Apr. 21, 2015 phone call, on CD-ROM filed at Doc. 36). And the third time that MSI reached Cesaire—on the morning of May 1, 2015—Cesaire asked MSI to "please call [him] around four o'clock" because he was working. (May 1, 2015 phone call, on CD-ROM filed at Doc. 36; see also Call Log, Doc. 31-7). When MSI responded that it could indeed call him back, Cesaire said, "All right then, thanks, bye." (Id.). And, during the final call on May 12, 2015, Cesaire verified his birthdate and MSI then discussed the details of his account balance with him. (Tr. of May 12, 2015 call, Doc. 31-6, at 1–2). Later during that call, Cesaire clearly and unequivocally stated "Just stop calling me. All right? Okay? Stop calling me." (Id. at 4).

and was able to provide the information.

MSI cites a recent district court decision, Schweitzer v. Comenity Bank, 158 F. Supp. 3d 1312 (S.D. Fla. 2016), in which the plaintiff argued that she revoked consent under the Telephone Protection Act when, during a call, she said to the creditor: "if you guys can not call me like in the morning and during the work day because I'm working and I can't really be talking about these things while I am at work." 158 F. Supp. 3d at 1313. The district court concluded that these statements were ineffective to revoke consent, whether "considered as either a request to stop all calls or only calls during certain times." Id. at 1315. The court found that the plaintiff "attempted to limit the timing of the calls" but that she "did not clearly convey to Defendant a desire not to receive further calls." Id. at 1317.

Schweitzer is currently on appeal to the Eleventh Circuit, and Cesaire asserts that it is factually distinguishable in his favor. Regardless of the outcome of that appeal, the Court finds that in this case, Cesaire's conditional statement to MSI is even weaker than Schweitzer's attempt to limit the times that her creditor called her. Again, Cesaire's statement was a conditional directive that imposed a condition that MSI was able to fulfill. Therefore, Cesaire's statement "if you can't give the information then don't call my phone" does not constitute clear revocation of consent. MSI's summary judgment motion is granted to the extent it seeks a ruling that Cesaire did not revoke consent during the November 13, 2014 phone call, and Cesaire's motion is denied on this issue.

### 3.    Willful or Knowing

Cesaire also seeks summary judgment on the question whether the fifty-two calls after November 13, 2014, are "willful or knowing" violations of the Telephone Protection Act. Cesaire contends that as of November 13, 2014, MSI knew that he wanted the calls to stop and knew that further calls would be in violation of the Telephone Protection Act.

Cesaire's argument is not persuasive.  The Court concluded in the previous section of this Order that Cesaire's statements to the MSI representative on November 13, 2014 were not sufficient to revoke consent and did not amount to an instruction to stop all calls. And even if the Court is incorrect as to the legal import of Cesaire's November 13 statement, Cesaire has not established that MSI knowingly or willfully violated the Telephone Protection Act.  "The requirement of 'willful[] or knowing[]' conduct requires the violator to know he was performing the conduct that violates the statute."  Lary v. Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101, 1107 (11th Cir. 2015).  The cases relied upon by Cesaire on this point—all of which involved a default judgment setting in which there was uncontroverted evidence of continued communications after a clear request that calls cease—are factually distinguishable.[16]  The Court agrees with MSI that the facts of this case do not support a finding of willful or knowing conduct either before or after the November 13, 2014 phone call.  Cesaire's motion is therefore denied on this issue.

### B.    Counts II and III—Florida Act and Federal Collection Act

In Count II, Cesaire alleges that MSI violated the Florida Act, and in Count III, he alleges that MSI violated the Federal Collection Act.  The Florida Act expressly provides that "in applying and construing [the civil remedies section of the Florida Act], due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the [Federal Collection Act]."  § 559.77(5),

---

[16] Coniglio v. Bank of Am., N.A., No. 8:14-CV-01628-EAK-MAP, 2014 WL 5366248, at *5 (M.D. Fla. Oct. 21, 2014) (finding knowing and/or willful violation where defendant called plaintiffs after they sent defendant "written notifications . . . with specific and unmistakable instructions . . . to immediately cease and desist communications"), vacated and remanded on other grounds, 638 F. App'x 972 (11th Cir. 2016); Clements v. DSM Supply LLC, No. 8:13-cv-1096-T-33EAJ, 2014 WL 560561, at *2–3 (M.D. Fla. Feb. 13, 2014) (knowing and willful violation where it occurred after plaintiff sent written request to cease contacting her); Gambon v. R & F Enters., Inc., No. 6:14-cv-403-Orl-18GJK, 2015 WL 64561, at *5 (M.D. Fla. Jan. 5, 2015).

Fla. Stat. These claims thus overlap somewhat.

MSI requests summary judgment on the Federal Collection Act claim on the basis that it is not a "debt collector" as required for liability under that statute. MSI additionally seeks summary judgment on both Count II and Count III, asserting that its calling of Cesaire does not constitute actionable conduct under either the Florida Act or the Federal Collection Act. Cesaire, on the other hand, seeks summary judgment in his favor as to liability on both of these claims, maintaining that MSI is indeed a "debt collector" under the Federal Collection Act and that MSI's allegedly harassing conduct entitles him to $1000 in statutory damages under each statute; he asks that actual and punitive damages be determined by a jury.[17]

>    1.    "Debt collector" under the Federal Collection Act

"The [Federal Collection Act]'s restrictions apply only to 'debt collectors.'" Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1273 (11th Cir. 2014); see 15 U.S.C. § 1692d (proscribing specified actions by "debt collectors"); id. § 1692k (providing for liability of "any debt collector who fails to comply with any provision of this subchapter"). Thus, MSI must qualify as an "debt collector" under the Federal Collection Act before it can be held liable under this statute.[18] The parties dispute whether MSI so qualifies.

Subject to several exceptions, the Federal Collection Act defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any

---

[17] The Federal Collection Act provides for recovery of "any actual damages" and "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a). The Florida Act similarly provides that a person who violates its provisions "is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000." § 559.77(2), Fla. Stat. The Florida Act, but not the Federal Collection Act, allows for recovery of punitive damages as well. Id.

[18] The proscriptions of the Florida Act, on the other hand, are not limited to "debt collectors." The "prohibited practices" section of that act begins, "[i]n collecting consumer debts, **no person** shall . . . ." § 559.72, Fla. Stat. (emphasis added).

business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). One of the exceptions is that "[t]he term does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . **concerns a debt which was not in default at the time it was obtained by such person**." Id. § 1692a(6)(F)(iii) (emphasis added). Relying on the § 1692a(6)(F)(iii) exception, MSI contends that it cannot be characterized as a debt collector under the Federal Collection Act here because Cesaire's "medical services debt obligation was not in default during [MSI's] attempted communications" with Cesaire. (Doc. 28 at 16). MSI has not, however, established entitlement to summary judgment on this basis.

"Unfortunately, the [Federal Collection Act] does not define so key a term as 'default.'" Alibrandi v. Fin. Outsourcing Servs., Inc., 333 F.3d 82, 86 (2d Cir. 2003). In Alibrandi, the Second Circuit noted that "courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default." Id. (footnote omitted). "'[A]pplicable contractual or regulatory language defining the point of default [is also] instructive.'" Bohringer v. Bayview Loan Servicing, LLC, 141 F. Supp. 3d 1229, 1237 (S.D. Fla. 2015) (quoting Church v. Accretive Health, Inc., No. 14-CIV-0057-WS-B, 2014 WL 7184340, at *3 (S.D. Ala. Dec. 16, 2014)). And whether a defendant "treated the debt as if it were in default at the time of acquisition" is also germane. Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 362 (6th Cir. 2012).

From the summary judgment record, the Court cannot—regardless of what definition of "default" is applied—ascertain whether Cesaire's debts were in default at the

time Florida Hospital forwarded them to MSI.  Although MSI and Florida Hospital had a contract regarding MSI's services, that contract has not been submitted into the record; thus, it is not clear how MSI or Florida Hospital defined "default," if at all.  And while MSI attests that the accounts it receives from Florida Hospital "have not yet been placed in a 'charged off' or 'bad debt' status,"[19] this is not determinative of the meaning of "default" or what MSI regarded as "default."  MSI has not established that Cesaire's debts were "not in default" when it obtained them, and its motion is denied on the issue whether it is a "debt collector" under the Federal Collection Act.

    2.    *Harassing conduct under the Federal Collection Act and the Florida Act*

The Florida Act provides in part that "[i]n collecting consumer debts, no person shall . . . "[w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family."  § 559.72(7), Fla. Stat.  The Federal Collection Act similarly provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  42 U.S.C. § 1692d.  Violative conduct under this portion of the Federal Collection Act includes but is not limited to "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  Id. § 1692d(5).  Cesaire contends that MSI violated these provisions because its conduct rose to the level of harassment.  MSI, however, maintains that its placing of calls to Cesaire does not rise to the level of a violation

---

[19] (Dusty Vigil Decl. ¶ 4).

of either of these statutes.  The Court agrees with MSI.

As noted by Cesaire, "[w]hether there is actionable harassment or annoyance [under the Federal Collection Act] turns not only on the volume of calls made, but also on the pattern of calls."  Joseph v. J.J. Mac Intyre Cos., 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002); accord Brandt v. I.C. Sys., Inc., No. 8:09-cv-126-T-26MAP, 2010 WL 582051, at *2 (M.D. Fla. Feb. 19, 2010).  It is also important to consider whether the calls "were accompanied by oppressive conduct."  Pugliese v. Prof'l Recovery Serv., Inc., No. 09-12262, 2010 WL 2632562, at *9 (E.D. Mich. June 29, 2010)).  Here, considering the number of calls, the pattern of calls, and the nature of MSI's conduct, Cesaire's Florida Act and Federal Collection Act claims fail as a matter of law.

MSI's call log—upon which Cesaire relies in his attempt to establish his claims—reflects that MSI called Cesaire thirty times between November 12, 2014, and January 8, 2015, and twenty-five more times between March 18, 2015 and May 12, 2015.  (Doc. 31-7).  This yields an approximate average of fifteen calls per month during the first interval and thirteen times per month during the second interval.  MSI did call Cesaire more than once per day on several occasions from November 2014 to January 2015,[20] but only when the initial call was unanswered, and same-day calls were at least three hours apart.[21]  MSI sometimes called on consecutive days,[22] but on days when MSI left a message or spoke

---

[20] The call log does not reflect any occasions after January 8, 2015 on which MSI called Cesaire more than once on the same day.  (Doc. 31-7).

[21] (See Doc. 31-7 (Nov. 13, 2014: answered call eight hours after unanswered call; Dec. 2, 2014: three unanswered calls, three hours apart; Dec. 3, 2014: unanswered call followed by voice message three hours later; Dec. 8, 2014: unanswered call followed by voice message three hours later; Dec. 12, 2014: two unanswered calls four hours apart; December 30, 2014: two unanswered calls three hours apart followed by "prespeak hangup" three hours later; & Jan. 8, 2015: two unanswered calls three hours apart)).

[22] (See Doc. 31-7 (reflecting calls on Nov. 12 & 13, 2014; Nov. 18 & 19, 2014; Dec. 2 & 3, 2014; Dec. 15 & 16, 2014; Jan. 7 & 8, 2015; Mar. 18, 19, & 20, 2015; Mar. 24, 25,

to Cesaire, it did not call the following day.[23]

Here, the volume of calls is not extremely high, and even if it were, absent "further oppressive conduct" a large volume of unanswered calls merely represents "a legitimate persistent effort to reach the plaintiff." Carman v. CBE, 782 F. Supp. 2d 1223, 1230–31 (D. Kan. 2011) (discussing Pugliese, 2010 WL 2632562). There is no evidence that MSI's representatives were abusive or rude to Cesaire; indeed, in each of the four recorded calls that have been provided to the Court, the caller identified herself by name, explained that she was calling on behalf of Florida Hospital, and was polite to Cesaire.[24]

Neither the Federal Collection Act nor the Florida Act prohibits legitimate attempts to contact a debtor,[25] which is all that is reflected by the record evidence in this case. "Debt collectors do not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct . . . ." Pugliese, 2010 WL 2632562, at *10. Here, as in Carman, "the evidence suggests an intent by [the caller] to establish contact with plaintiff, rather than an intent to harass." 782 F. Supp. 2d at 1232. Viewing the evidence in the light most favorable to Cesaire, as a matter of law MSI's calls do not amount to harassing conduct that violates the Florida Act or the Federal Collection Act. See, e.g., Valle v. Nat'l Recovery

---

26, & 27, 2015; Apr.1, 2, & 3, 2015; Apr. 7, 8, 9, & 10, 2015; and Apr. 14, 15, 16, & 17, 2015)).

[23] (See Doc. 31-7 (showing message left or conversation with Cesaire on Nov. 13, 2014, Nov. 19, 2014, Dec. 3, 2014, Dec. 8, 2014, Dec. 10, 2014, Apr. 17, 2015, Apr. 21, 2015, Apr. 28, 2015, and May 1, 2015, and no calls made the day after any of these days)).

[24] The recordings are provided on two CD-ROMs that have been filed with the Court.

[25] See, e.g., Dalton v. FMA Enters., Inc., 953 F. Supp. 1525, 1531 (M.D. Fla. 1997) ("The [Federal Collection Act] was 'not intended to shield . . . consumers from the embarrassment and inconvenience which are the natural consequences of debt collection.'" (second alteration in original) (quoting Higgins v. Capitol Credit Servs., Inc., 762 F. Supp. 1128, 1135 (D. Del. 1991))).

Agency, No. 8:10-cv-2775-T-23MAP, 2012 WL 1831156, at *2 (M.D. Fla. May 18, 2012) (collecting cases involving more egregious facts where courts granted summary judgment in favor of the callers).[26]  Accordingly, with regard to Counts II and III of the Complaint MSI's motion will be granted and Cesaire's motion will be denied.

## IV.    Conclusion

It is **ORDERED** as follows:

1.    MSI's Motion for Summary Judgment (Doc. 28) is **GRANTED in part and DENIED in part**.  The motion is **granted** on Counts II and III and is **granted in part and denied in part** on Count I as set forth in this Order.

2.    Cesaire's Motion for Partial Summary Judgment (Doc. 31) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on November 23, 2016.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

---

[26] Among the collected cases in <u>Valle</u> are <u>Tucker v. CBE Grp., Inc.</u>, 710 F. Supp. 2d 1301 (M.D. Fla. 2010), which involved seven calls per day and six identical voice messages, <u>Waite v. Fin. Recovery Servs.,Inc.</u>, No. 8:09-cv-2336, 2010 WL 5209350 (M.D. Fla. Dec. 16, 2010), in which the debt collector called 132 times in nine months and often called four times per day, and <u>Carman</u>, where the collector called 149 times in two months).